HARDY, Judge.
This is a compensation suit in which plaintiff claims to have sustained an accidental injury on or about August 19, 1948, ■in the regular course of his employment by defendant, Gross & Janes Company. Consolidated Underwriters, the workmen’s compensation insurer of said Company, is joined as defendant. Plaintiff claimed total and permanent disability and sought judgment in the amount of $30.00 per week for a period of 400 weeks. After trial there was judgment in favor of plaintiff at the maximum rate of $30.00 per week for a period of 20 weeks, from which judgment defendants have appealed. Plaintiff has answered the appeal, praying the amendment of the judgment to the extent of awarding $30.00 per week for a period of 20 weeks and $20.00 per week for a period of 270 weeks.
There is little, if any, dispute as to the actual facts with respect to the occurrence of the accident itself. Plaintiff is a tie-cutter, and at the time was engaged in cutting ties on a tract of land in the Kisat-chie National Forest Reserve of the United States, from whom the defendant, Gross & Janes, had purchased the timber. On the date set forth plaintiff slipped and fell upon his axe, inflicting a severe cut in his left leg above the knee joint.
Counsel for defendants correctly sets up the issues involved in the case before us as follows:
1. The relationship between plaintiff and Gross & Janes Company.
2. The nature of the business of Gross & Janes Company.
3. The extent and duration of plaintiff’s injuries and the rate of compensation.
These issues comprehend the respective defenses which are interposed against plaintiff’s demand. Under them defendants contend that the relationship between plaintiff and Gross & Janes Company was that of vendor and vendee of manufactured ties; that Gross & Janes Company is engaged solely and exclusively, in the business of purchasing manufactured ties, and, accordingly,-is not subject to classification as being engaged in a hazardous business, as a consequence of which plaintiff cannot be held to have been engaged in the prosecution of the regular business of said defendant; and, finally, that plaintiff’s injuries were of lesser extent and his rate of compensation of less amount than found by the District Judge.
The first two issues are necessarily interrelated. If defendant, Gross & Janes, is engaged solely and exclusively in the business of purchasing cross-ties and not in the manufacture of same, it logically follows that the relationship between plaintiff and said defendant could not be construed as being that of employee or independent contractor. In support of the asserted contention distinguished counsel for defendants rely primarily upon the opinion of this Court in the case of Grant v. Consolidated Underwriters, 33 So.2d 575. In the cited case the defendants were identical with those now before the Court. In the course of our opinion in disposing of this defense we found that there was nothing in the record which would disprove the contention that the trade and business of Gross & Janes was not covered by the Workmen’s Compensation Statute, Act No. 20 of 1914, as amended, since its business of purchasing cross-ties was not of a hazardous nature.
It is strenuously urged that the same finding would be apropros in the instant case.
Unfortunately for defendant’s contention in this respect, we are precluded from reaching the same conclusion by reason of the vital distinction in the facts established by the record before us in the present case.
In the Grant case we held as a fact that Gross & Janes was not the owner of the timber involved and that the plaintiff was not an employee of Gross & Janes, but, on the contrary, was in the employ of one *376 McAllister, an independent sawmill operator.
Despite defendant’s contention in this case that the agreement between Gross & Janes and the United States was not an actual deed to timber, we think the plain terms of the instrument itself must inevitably lead to quite the opposite conclusion. The contract is denominated “Timber Sale Agreement”, and in the instrument Gross & Janes Company is consistently referred to as the “purchaser”. But .we do not think this point, of sufficient importance to justify detailed consideration and ■ discussion, inasmuch as it is not a material fact in the determination of the issues presented.
Reference to the record for the purpose of establishing the nature of the trade or business of Gross & Janes Company convinces us that the effect of the testimony, of one of defendant’s principal witnesses utterly destroys this particular defense. The following extracts from the testimony of Mr. Ed Nicklas, District Superintendent of Gross & Janes Company, admittedly in charge of general supervision of the business of the company in the area involved, are pertinent:
“Q. Now, how does Gross & Janes Company operate in your district? A. Well, in ibsual cases, we do not have anything at all to do with timber. We sometimes have to buy this timber and make it on a stick basis strictly. We hold out what it is for per stick. Usually we buy the ties at a certain price delivered on the yard.”
******
“Q. You are the man in charge of the overall operations in this territory for Gross & Janes? A. Yes, sir.
“Q. Were you the one that looked over the government timber and made a bid on it for the company? A. Yes, sir.
“Q. Now, what would have happened if some of the tie makers down there, or even if the plaintiff in - this suit, had cut some ties on the tract down there and carried them to Hobbs-Western or some other competitive tie company? A. We wasn’t required to check that. That was the government official job.
“Q. Had they carried it there, would you have requested them to pay you merely the stumpage price and let it be sold wherever they wanted .to sell it, or would you request them to bring that tie timber or those ties into your yard? A. The contract was that we receive all these ties. If we didn’t receive them, all the government officials were watching that. We had no men watching to see if they carried it off.
“Q. What would you have done if a man come down there and made ties on the government tráct and just paid you what you owed the government for stumpage ? You would have fired him, wouldn’t you? A. We would have' requested them to bring the ties to us. We wouldn’t have to fire them.
“Q. You would have fired then?, would you not have? A. We bought this tinu-ber, this good amount of timber to further our production because these handlers could have bought the same tract if they had the money to deposit for the timber.
“Q. Have you finished now? A. Yes, sir.
“Q. Now, I am going to ask you since you have stated you bought the■ timber to further your production had you learned that any tie maker was selling the ties to someone other than Gross & Janes even though he was remitting to you the stump-age price to the government, wouldn’t you have promptly discharged him because you wanted to further your production? A. That’s right.” (Emphasis supplied by the Court.)
We think it is quite clear from the above-quoted extracts of testimony that the particular case here involved constituted a definite departure from the usual and customary method of operation of the business of Gross & Janes Company. Whatever may have been their usual methods of operation, we are' certain that in this instance the Company actually was engaged not solely in the purchase but in the actual manufacture of tie timber.. As a consequence of this finding of fact we can accord no consideration to the contention made that this defendant was not engaged *377 in a hazardous employment and that plaintiff was not injured while in the course and scope of the trade and business of the named defendant.
■ It is true, as pointed out by counsel for defendants, that plaintiff furnished his own tools; that he worked as and when he pleased; that he was not required to produce any definite number of ties nor to work any specified number of hours, and further, that on occasions he hauled ties for other parties engaged in cutting on the same tract in his own truck, for which he received fixed sums as hauling charges. Despite all these facts we think their effect is overcome by the clearly established circumstances that Gross & Janes was the purchaser of the timber under contract from the government, and that plaintiff could not be considered as other than an employee engaged by Gross & Janes, either specifically or permissively, to cut its timber and manufacture ties in furtherance of its production. This finding obviates the necessity of any discussion of the question of an independent contractor.
Finally, we have given careful consideration to the record as bearing upon the extent and duration of plaintiff’s injuries and his rate of compensation. These matters involve questions of fact which we think were correctly resolved by the Judge of the District Court. Plaintiff’s injuries were not nearly so severe in nature and extent as contended by him but they were of greater degree than admitted by defendants. As to the rate of compensation, it is quite true under the facts of this case that there is some uncertainty on this point. Inasmuch as plaintiff was paid for piecework, and the amount of work varied from week to week, there is no definite basis upon which to predicate a weekly wage. Nonetheless we think the record amply supports the finding of an average earning over a period of time which would entitle plaintiff to the maximum allowance under the statute. We consider that the award made was neither inadequate nor excessive.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.